# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 10, 1999 Session

## MERRIMACK MUTUAL FIRE INSURANCE COMPANY v. GLORIA C. BATTS

**Appeal from the Chancery Court for Davidson County**
**No. 98-3345-II    Carol L. McCoy, Chancellor**

---

**No. M1999-00078-COA-R3-CV - Filed May 15, 2001**

---

This appeal involves a dispute between a homeowner and her insurance company regarding the damages to her house caused by the tornado that struck Nashville on April 16, 1998. When they could not agree on the amount of the loss, both parties invoked the insurance policy's provision for the appointment of appraisers. After the parties' two appraisers could not agree on the amount of the loss, the two appraisers selected a third appraiser who eventually agreed with the homeowner's appraiser regarding the amount of the loss. The insurance company filed suit in the Chancery Court for Davidson County, seeking a declaratory judgment that it was required to pay the homeowner less than one-half of the amount of the loss calculated by the two appraisers. Both parties filed motions for partial summary judgment. The trial court granted the insurance company's motion, concluding that the insurance policy's appraisal clause was not an agreement for binding arbitration and that the appraisers had not been empowered to determine whether parts of the claimed damage had been caused by a peril covered by the policy. The homeowner takes issue with both of the trial court's legal conclusions on this appeal. We have determined that the trial court interpreted the insurance policy correctly and, therefore, that the trial court properly concluded that the insurance company was entitled to a judgment as a matter of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Raymond G. Prince, Nashville, Tennessee, for the appellant, Gloria C. Batts.

Parks T. Chastain, Nashville, Tennessee, for the appellee, Merrimack Mutual Fire Insurance Company.

## OPINION

Gloria Batts owns a two-story house in East Nashville. On April 16, 1998, her house was substantially damaged when a severe windstorm and accompanying tornado tore its way through Nashville. Ms. Batts notified Merrimack Mutual Fire Insurance Company ("Merrimack"), her

homeowners casualty insurance company, that the tornado had damaged five bedrooms, the living room, a bathroom, a hallway, two porches, some fencing, and at least one outbuilding.

Although Merrimack's policy contemplated fairly prompt settlement of claims, Ms. Batts and Merrimack could not agree on the amount of her loss. The policy anticipated and provided a procedure for resolving just this kind of stalemate. Under a paragraph headed "Appraisal," the policy stated:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

In late June 1998, Ms. Batts retained George Keys of Howarth, Keys, Manley & Associates as her appraiser. Merrimack retained David Horton of Horton & Associates.

Mr. Keys placed the damage to Ms. Batts's property at $121,116.75. He characterized his appraisal as a "building estimate" that covered repair work, including replacing the hardwood floors, replacing windows, re-doing walls and ceilings, resetting bathroom fixtures, leveling the front porch, and replacing the chimneys, a sidewalk, and a paved driveway. Mr. Keys's estimate of the loss differed markedly from Mr. Horton's estimate. After deducting for depreciation of certain items, Mr. Horton determined that Ms. Batts's net loss was $11,457.28. This ten-fold difference between the two appraisers' opinions can be traced to the appraisers' differing views regarding the repairs that were traceable to the windstorm and tornado.

Because Mr. Keys and Mr. Horton were at an impasse, they appointed a third appraiser to act as the "umpire" envisioned by the appraisal clause in Ms. Batts's homeowners policy. At Mr. Horton's suggestion, they agreed on Alden Ward of MasterCraft MasterClean. Mr. Ward met with Messrs. Keys and Horton at Ms. Batts's house in late July 1998 to finalize the amount of Ms. Batts loss. The appraisers quickly fell to cross purposes. According to Mr. Horton, Messrs. Keys and Ward were attempting to decide whether the policy covered certain items of damage and whether Ms. Batts's claims might exceed the limits of her policy. Mr. Horton objected because he believed that their sole responsibility was to place a dollar amount on the property damage and that it was Merrimack's prerogative to determine which items of damage were covered by Ms. Batts's policy. Mr. Keys argued that the appraisers could not intelligently determine the amount of the damage without also determining whether the damage had been caused by the tornado. Mr. Ward sided with Mr. Keys.

Mr. Ward eventually submitted a property damage estimate to Merrimack stating that the "amount of loss due" under Ms. Batts's policy was $45,622.95. Mr. Keys agreed with Mr. Ward's estimate, but Mr. Horton did not. On November 9, 1998, Merrimack forwarded Ms. Batts checks totaling $21,070.85 to settle her claim. In an accompanying cover letter, Merrimack explained that it was not paying the full amount of Mr. Ward's appraisal because Mr. Ward's responsibility was limited to determining the amount of the loss and did not extend to deciding coverage questions. The letter also stated that Merrimack had reduced Mr. Ward's appraisal because (1) it included several items that had not, in Merrimack's opinion, been damaged by the tornado, (2) it included the replacement cost, rather than the actual cash value, of several items that had not been repaired, and (3) it had allocated $12,666.98 for items that had already been repaired for $7,045.90.

Ms. Batts declined to accept Merrimack's settlement checks because she believed she was entitled to the full amount of Mr. Ward's appraisal. On November 10, 1998, Merrimack filed suit in the Chancery Court for Davidson County seeking a declaratory judgment that its liability to Ms. Batts was limited to $21,070.85. Both parties filed motions for partial summary judgment on the coverage issues. On March 3, 1999, the trial court entered an order granting Merrimack's motion for partial summary judgment. The court rejected Ms. Batts's argument that Merrimack was bound by Mr. Ward's appraisal and held that Merrimack reserved the right under the policy to decide coverage questions after receiving the appraisal of the loss. The court also concluded that Merrimack was not obligated to pay the replacement cost of items that had not been repaired or replaced and that Merrimack was also entitled to reject the portions of Mr. Ward's appraisal that exceeded the amount actually spent to repair or replace the damage. Finally, the trial court certified its order as final under Tenn. R. Civ. P. 54.02 because it had not yet addressed the parties' dispute concerning whether the tornado had caused several of the claimed items of damage. Ms. Batts has appealed from this order.

## I.
### THE STANDARD OF REVIEW

Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001); *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998).

Summary judgments enjoy no presumption of correctness on appeal. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Burress v. Sanders*, 31 S.W.3d 259, 262 (Tenn. Ct. App. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most

favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001); *Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Tamco Supply v. Pollard*, 37 S.W.3d 905, 908 (Tenn. Ct. App. 2000).

Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998); *Rapp Constr. Co. v. Jay Realty Co.*, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991). Insurance policies are contracts, and thus scope of coverage issues present questions of law. *Pile v. Carpenter*, 118 Tenn. 288, 296, 99 S.W. 360, 362 (1907); *Pennsylvania Lumbermens Mut. Fire Ins. Co. v. Holt*, 32 Tenn. App. 559, 566, 223 S.W.2d 203, 206 (1949). A declaratory judgment proceeding is an appropriate vehicle for deciding coverage questions, *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998), and, when the relevant facts are not in dispute, the legal issues regarding a policy's coverage may be resolved by summary judgment. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834 (Tenn. 1994); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992).

## II.
### CONSTRUCTION OF INSURANCE POLICIES

The respective rights of an insured and an insurance company are governed by their contract of insurance. Thus, determining whether Merrimack is entitled to a summary judgment entails construing the insurance policy that Merrimack issued to Ms. Batts. Insurance contracts are subject to the same rules of construction that are used to interpret other types of contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995).

As with any other contract, the courts must give effect to the parties' intentions as reflected in their written contract of insurance. *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995); *Blaylock & Brown Constr. Co. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). The insurance policy should be construed as a whole in a reasonable and logical manner. *English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954); *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d at 7. The courts should interpret an insurance policy as written and should give the policy's terms their natural and ordinary meaning. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986).

The insuring agreement defines the outer limits of an insurance company's contractual liability. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Ltd.*, 972 S.W.2d at 7. The courts are not at liberty to rewrite an insurance policy solely because they do not favor its terms, *Black v. Aetna Ins. Co.*, 909 S.W.2d at 3, and must avoid forced constructions that render a provision ineffective or extend a provision beyond its intended scope. *Demontbreun v. CNA Ins. Cos.*, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991). In the absence of fraud, overreaching, or unconscionability,

the courts must give effect to a provision in an insurance policy when its terms are clear and its intent certain. *Quintana v. Tennessee Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989).

## III.
### THE POLICY'S PROVISION FOR APPRAISING THE AMOUNT OF THE LOSS

Ms. Batts first asserts that the trial court erred by refusing to interpret the appraisal clause in her homeowners policy as an binding arbitration agreement requiring Merrimack to pay the full amount of Mr. Ward's calculation of the amount of her loss. We have determined that this argument is not well-taken for two reasons. First, the appraisal clause is not an agreement to arbitrate. Second, even if the appraisal clause could be construed as an agreement to arbitrate, it is not enforceable because it was not executed in accordance with the requirements of Tenn. Code Ann. § 29-5-302(a) (2000).

### A.

Tennessee's judicial system has not always looked upon private arbitration with favor even though arbitration has existed in various forms since the Roman era. As late as twenty-five years ago, the Tennessee Supreme Court, held that "ordinarily provisions in private contracts for the arbitration of future disputes are not enforceable." *Cavalier Ins. Corp. v. Osment*, 538 S.W.2d 399, 403 (Tenn. 1976). However, during the past two decades, the attitude of Tennessee's courts, like the federal courts and many other state courts,[1] has changed. Today Tennessee's courts construe arbitration agreements broadly in favor of arbitration and routinely uphold and enforce arbitration agreements. *Buraczynski v. Eyring*, 919 S.W.2d 314, 321 (Tenn. 1996) (enforcing a physician's arbitration agreement requiring patients to accept binding arbitration of medical malpractice claims in lieu of a judicial remedy); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905, 908 (Tenn. Ct. App. 1991) (enforcing a provision requiring arbitration of disputes between a corporation and its minority stockholders).

Until relatively recent times, the ground rules for arbitration of future disputes were largely found in the common law. *Jackson v. Chambers*, 510 S.W.2d 74, 76 (Tenn. 1974); *Meirowsky v. Phipps*, 222 Tenn. 112, 117, 432 S.W.2d 885, 887 (1968); *Halliburton v. Flowers*, 59 Tenn. (12 Heisk.) 25, 26-28 (1873). In 1983, the General Assembly enacted a version of the Uniform Arbitration Act that had been approved in 1955 by the National Conference of Commissioners on Uniform State Laws.[2] The purpose of this Act was "to validate arbitration agreements, make the arbitration process effective, provide necessary safeguards, and provide an efficient procedure when judicial assistance is necessary." Uniform Arbitration Act, Prefatory Note, 7 U.L.A. 2 (1997).

---

[1] 1 Gabriel M Wilner, *Domke on Commercial Arbitration* § 3:01 (rev. ed. 2000) ("Domke on Commercial Arbitration"); Michael A. Scodro, *Arbitrating Novel Legal Questions: A Recommendation for Reform*, 105 Yale L.J. 1927, 1929 (1996).

[2] Act of May 11, 1983, ch. 462, 1983 Tenn. Pub. Acts 946, *codified at* Tenn. Code Ann. §§ 29-5-301, -320 (2000).

Accordingly, the outcome of disputes regarding general arbitration agreements are largely controlled by statute.

**B.**

Ms. Batts's argument that the appraisal clause in her insurance policy is an arbitration agreement overlooks the fact that arbitration proceedings and appraisal proceedings are not the same thing. Arbitration is a consensual proceeding in which the parties select decision-makers of their own choice and then voluntarily submit their disagreement to those decision-makers for resolution in lieu of adjudicating the dispute in court. Robert E. Keeton & Alan I. Widis, *Insurance Law* § 9.6(b)(1), at 1059 (1988); *Domke on Commercial Arbitration* § 1.01. Appraisal is something narrower. Appraisal is the act of estimating or evaluating something; it usually means the placing of a value on property by some authorized person. *Unetco Indus. Exch. v. Homestead Ins. Co.*, 67 Cal. Rptr.2d 784, 789 (Ct. App. 1997); *Littlehead v. Sheppard*, 251 P. 60, 62 (Okla. 1926). Specifically, the object of appraisal in cases of casualty insurance is to quantify the monetary value of a property loss. *Palatine Ins. Co. v. Morton-Scott-Robertson Co.*, 106 Tenn. 558, 578, 61 S.W.787, 791 (1901), not to decide questions of liability. *Meirowsky v. Phipps*, 222 Tenn. at 119-20, 432 S.W.2d at 888.

Many courts and commentators have discussed the differences between arbitration proceedings and appraisal proceedings. The United States Court of Appeals for the Fifth Circuit has succinctly explained the differences as follows:

> Insurance appraisals are generally distinguished from arbitrations. While both procedures aim to submit a dispute to a third party for speedy and efficient resolution without recourse to the courts, there are significant differences between them. For example, an arbitration agreement may encompass the entire controversy between parties or it may be tailored to particular legal or factual disputes. In contrast, an appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy. Additionally, an arbitration is a quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses. Appraisals are informal. Appraisers typically conduct independent investigations and base their decisions on their own knowledge, without holding formal hearings. (Citations and footnotes omitted).

*Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061-62 (5th Cir. 1990). *See also Casualty Indem. Exch. v. Yother*, 439 So. 2d 77, 79-80 (Ala. 1983); *Kawa v. Nationwide Mut. Fire Ins. Co.*, 664 N.Y.S.2d 430, 431-32 (Sup. Ct. 1997).

While we recognize that some jurisdictions, perhaps out of their enthusiasm for alternative dispute resolution procedures, have blurred the distinction between arbitration proceedings and

appraisal proceedings,[3] we find it unnecessary and even inappropriate to abandon the workable distinction between the two in this case. When Merrimack drafted its insurance policy, it did so relying on the generally prevailing understanding that an appraisal was just that – an appraisal, not binding arbitration. We decline, on these facts, to upset this settled expectation. Accordingly, we concur with the trial court's conclusion that the appraisal clause in Ms. Batts's insurance policy was not an agreement for binding arbitration.

## C.

There is a second, equally compelling reason for declining to interpret and enforce the appraisal clause in Ms. Batts's homeowners policy as an agreement for binding arbitration. Even if the clause could be construed to be an agreement for arbitration, it does not meet the statutory requirements to make it binding and irrevocable.

Tennessee's version of the Uniform Arbitration Act contains two non-conforming provisions, one of which figures prominently in this case. The section of the uniform act dealing with the enforceability of an agreement to arbitrate provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This act also applies to arbitration agreements between employers and employees or between their respective representatives [unless otherwise provided in the agreement].

Uniform Arbitration Act § 1, 7 U.L.A. 6-7. However, the General Assembly changed this section when it enacted the statute, and thus Tenn. Code Ann. § 29-5-302(a) reads:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, that for contracts relating to farm property, structures or goods, or to property and structures utilized as a residence of a party, the clause providing for arbitration shall be additionally signed or initialed by the parties.

Our task in construing Tennessee's version of the Uniform Arbitration Act is to ascertain and to give effect to the General Assembly's purpose as reflected in the statute's language. *Lavin v.*

---

[3] *See Closser v. Penn Mut. Fire Ins. Co.*, 457 A.2d 1081, 1087 (Del. 1983); *Intracoastal Ventures v. Safeco Ins. Co.*, 540 So.2d 162, 164 (Fla. Dist. Ct. App. 1989); *Beard v. Mount Carroll Mut. Fire Ins. Co.*, 561 N.E.2d 116, 118 (Ill. App. Ct. 1990); *Friday v. Trinity Universal*, 939 P.2d 869, 871 (Kan. 1997).

*Jordon*, 16 S.W.3d 362, 365 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 926 (Tenn. 1998). We must initially look to the language of the arbitration statutes, *Riggs v. Burson*, 941 S.W.2d 44, 54 (Tenn. 1997); *Realty Shop, Inc. v. RR Westminster Holding,Inc.*, 7 S.W.3d 581, 602 (Tenn. Ct. App. 1999), and we must avoid construing these statutes in a way that outstrips the General Assembly's expressed purpose. *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 223 (Tenn. Ct. App. 2000).

A judicial construction of a statute will more likely conform to the General Assembly's purpose if the court approaches the statutory text assuming that the General Assembly chose its words deliberately. *Tidwell v. Servomation-Willoughby Co.*, 483 S.W.2d 98, 100 (Tenn. 1972); *Clark v. Crow*, 37 S.W.3d 919, 922 (Tenn. Ct. App. 2000). The courts should, therefore, construe statutory provisions in the context of the entire statute and in light of the statute's general purpose, *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997), and should likewise give the words used in the statute their natural and ordinary meaning. *State ex rel. Metro. Gov't v. Spicewood Creek Watershed Dist.*, 848 S.W.2d 60, 62 (Tenn. 1993).

An arbitration agreement must be in writing in order to be binding and enforceable. If the agreement relates to "property and structures used as a residence of a party," Tenn. Code Ann. § 29-5-302(a) also requires that the agreement be "additionally signed or initialed by the parties." The location of a signature on an agreement does not normally control the parties' rights unless the law specifies that a signature must appear in a particular location. Restatment (Second) of Contracts § 134 cmt. b (1981). Because of the significant effect that agreeing to binding arbitration has on a homeowner's rights, the General Assembly determined that these clauses must be brought to a homeowner's attention and that a person doing business with a homeowner will not be able to enforce a binding arbitration clause unless the homeowner has explicitly assented to it by placing a signature or initial adjacent to the clause.

There is no dispute that Ms. Batts did not separately sign the appraisal clause either in Merrimack's policy or on any application for insurance she might have completed. Accordingly, by operation of Tenn. Code Ann. § 29-5-302(a), neither she nor Merrimack can require the other to submit to binding arbitration, if, indeed, that is what the appraisal clause in Ms. Batts's homeowners policy required. Ms. Batts does not disagree with the plain meaning of Tenn. Code Ann. § 29-5-302(a) but attempts to circumvent it by arguing that it would be "grossly inequitable" not to enforce the clause against Merrimack because Merrimack never told her that the clause would have to be separately signed or initialed to be enforceable. This argument misses the point. Merrimack never intended the appraisal clause in its homeowners policy to be an agreement for binding arbitration. Accordingly, Merrimack was under no obligation to specifically call this provision to Ms. Batts's attention or to offer her an opportunity to sign or initial it separately.[4]

---

[4] It is not customary for homeowners to sign the copy of their insurance policy provided by their insurer. Accordingly, the format of Merrimack's policy does not even provide spaces for an insured to separately sign or initial the appraisal clause. The absence of a separate signature line provides strong evidence that Merrimack never intended the appraisal clause to be an agreement for binding arbitration. If Merrimack intended to include an agreement for binding arbitration in its agreement, it would have required Ms. Batts to separately sign or initial such an agreement

(continued...)

-8-

**D.**

Based on the plain language and common understanding of appraisal clauses, we affirm the trial court's conclusions that the appraisal clause in Ms. Batts's homeowners policy is not an agreement for binding arbitration and, even if it were, that it would be unenforceable because it was not separately signed and initialed as required by Tenn. Code Ann. § 29-5-302(a). Accordingly, we affirm the trial court's conclusion that Merrimack was not bound by Mr. Ward's appraisal of the amount of Ms. Batts's loss.

**IV.**
**AN INSURER'S PREROGATIVE TO DETERMINE COVERAGE**

Ms. Batts also argues that the trial court erred by concluding that insurance appraisers do not have the authority to determine questions of coverage and liability under an insurance policy. This argument is another attack, albeit from a different direction, on the clear distinction between an appraiser and arbitrator. We have concluded that it must fail, first because it not supported by the plain language of Ms. Batts's insurance policy and second because it flies in the face of the settled law on this issue.

An appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties. The appraisal clause in Ms. Batts's homeowners policy is limited to determining the "amount of the loss" – the monetary value of the property damage. It does not vest the appraisers with the authority to decide questions of coverage and liability, and there is no evidence that Merrimack and Ms. Batts agreed independently to give this authority to Messrs. Keys, Horton, and Ward. Without evidence of the some agreement by the parties, there is no legal or factual basis for concluding that the appraisers were empowered to decide coverage questions.

More than four decades ago, in a casualty insurance case similar to this one, the Mississippi Supreme Court held that appraisers did not have the authority to decide liability and coverage questions because "nowhere in the standard [policy] for submission to appraisal is any power vested in or conferred upon the appraisers to determine the cause of the loss . . .." *Munn v. National Fire Ins. Co.*, 115 So. 2d 54, 56 (Miss. 1959). Other courts construing standard appraisal provisions similar to the one involved in this case have consistently agreed that appraisers have no power to decide coverage or liability issues. *E.g., Jefferson Ins. Co. v. Superior Court*, 475 P.2d 880, 883 (Cal. 1970); *Commonwealth Ins. Co. v. Soloman*, 119 A. 850, 853 (Del. 1923); *Opar v. Allstate Ins. Co.*, 751 So. 2d 758, 761 (Fla. Dist. Ct. App. 2000); *St. Paul Fire & Marine Ins. Co. v. Wright*, 629 P.2d 1202, 1203 (Nev. 1981); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 389 A.2d 439, 446 (N.J. 1978); *Minot Town & Country v. Fireman's Fund Ins. Co.*, 587 N.W.2d 189, 190 (N.D. 1998); *Kentner v. Gulf Ins. Co.*, 673 P.2d 1354, 1356 (Or. Ct. App. 1983); *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App. 1996); *Domke on Commercial Arbitration* §

---

[4](...continued)
when she applied for insurance coverage. Ms. Batts's homeowners insurance application is not in the record.

1:02, at 6-7. One court has suggested that disputed coverage and liability issues are best submitted to the courts before any dispute regarding the amount of the loss is submitted to the appraisers. *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich. Ct. App. 1991).

The plain language of Ms. Batts's homeowners policy confines the role of the appraisers to determining the "amount of the loss." In light of other courts' interpretation of similar language, we have concluded that the trial court correctly held that Messrs. Keys, Horton, and Ward did not have the prerogative to determine whether any particular loss claimed by Ms. Batts was caused by the tornado or whether Merrimack was ultimately liable under its policy for the loss. The final responsibility for resolving disputes over those issues, assuming the parties cannot reach an agreement on their own, rests with the courts.

## V.

We affirm the March 3, 1999 order granting Merrimack a partial summary judgment on the issues of coverage and liability under Ms. Batts's homeowners policy and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Gloria C. Batts and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE