# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 10, 2015 Session

## JOSEPH C. THOMAS, ET AL. V. THE STANDARD FIRE INSURANCE COMPANY, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 12-0328      Jeffrey M. Atherton, Chancellor**

---

### No. E2015-01224-COA-R3-CV-FILED-FEBRUARY 17, 2016

---

This appeal arises from an insurance claim for storm-related damage to the property of the plaintiffs. The case was resolved on a motion for summary judgment. According to the plaintiffs, the trial court erred by giving effect to the decision of the appraisal panel because the policy's appraisal provision is unenforceable. The plaintiffs contend the policy's appraisal provision constitutes an agreement to arbitrate subject to Tennessee's version of the Uniform Arbitration Act (Tenn. Code Ann.§ 29-5-301, et seq.). The plaintiffs further argue the appraisal provision does not comply with Tennessee Code Annotated section 29-5-302(a) of the Uniform Arbitration Act, which requires agreements to arbitrate over issues relating to property used as residences must be signed or initialed by the contracting parties. We affirm the trial court's findings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II., J., joined, and D. MICHAEL SWINEY, C.J., concurred with separate concurring opinion.

Grace E. Daniell, Chattanooga, Tennessee, for the appellants, Joseph C. Thomas and Grace E. Daniell.

Clint J. Woodfin, Knoxville, Tennessee, for the appellees, The Standard Fire Insurance Company and The Travelers Property Casualty Companies.

# OPINION

## I. BACKGROUND

On March 14, 2006, The Standard Fire Insurance Company ("Standard"), a subsidiary of The Travelers Property Casualty Companies ("Travelers") (collectively, "Insurer"), issued a homeowners insurance policy to the plaintiffs, Joseph C. Thomas and Grace C. Daniell ("Homeowners") for their residence located at 2967 Folts Circle, Chattanooga, Tennessee. The policy went into effect on March 14, 2006, and a high value home endorsement was added through an agency based in North Carolina effective from March 14, 2011, to March 14, 2012.

Windstorms and tornadoes swept through the Red Bank and North Chattanooga area on April 27, 2011. Homeowners contend their dwelling, other structures, and surrounding premises were damaged, with several large trees falling on their house and other structures. According to the complaint, over 130 trees on the property were damaged. Homeowners quickly submitted a claim to Insurer for the storm-related damage to their property. In May, adjusters for Insurer inspected the damage and issued payment for the claimed damage to personal property and trees, as well as for tree removal expenses. There is no dispute regarding the amounts Homeowners were paid for those aspects of their insurance claim.

The matter before us pertains to the amount Homeowners are due on the dwelling and other structures portions of their claim. Insurer retained construction consultants to determine the amount of loss. Homeowners likewise hired a contractor to prepare an estimate. When the estimates differed, Homeowners claimed Insurer had greatly underestimated the damage to their dwelling and other structures. According to Homeowners, substantially reduced policy benefits were offered to them compared to the actual damages they sustained.

On September 14, 2011, Insurer invoked the appraisal process set forth in the policy, found in subsection 6 of "SECTION I, CONDITIONS":

> 6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount

agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time they shall submit their differences to the umpire. ***Written agreement signed by any two of these three shall set the amount of the loss.*** Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and compensation of the umpire shall be paid equally by you and us.

(Emphasis added.). Per the terms of the policy provision, the parties each selected an appraiser. After the two appraisers were unable to agree on the amount of loss, the matter was submitted to an umpire. On December 3, 2012, the umpire determined the amount of the loss to be $132,793.95. The appraiser for Insurer concurred with that determination. Insurer agreed to issue payment in that amount. Homeowners, however, would not accept payment.

Homeowners filed this lawsuit, arguing Insurer breached the contract with them by refusing to timely pay the benefits they are entitled to receive under the policy. They contend Insurer engaged in unethical insurance practices involving delay and "low-balling," failed to conduct a timely and reasonable investigation of the damage, and delayed the investigation and resolution of Homeowners' claims. An award of a bad faith penalty pursuant to Tennessee Code Annotated section 56-7-105 was sought against Insurer. Additionally, Homeowners alleged Insurer's actions violated the Tennessee Consumer Protection Act, Tennessee Code Annotated section 47-18-109(a)(1), entitling them to recover treble damages.

After an unsuccessful motion to dismiss, Insurer filed a motion for summary judgment based upon the appraisal provision. Insurer sought to bind Homeowners to the amount of $132,793.95 for their loss. The motion was granted on June 12, 2015. The trial court noted:

[Insurer has] moved for summary judgment, arguing that the appraisal clause settles this issue and creates contractually binding obligations on both parties to – at least given the factual events in this case – accept the umpire's figure as correct and accurate. In response, [Homeowners] have argued that the appraisal clause is not binding on them in this matter and that they retain the right to challenge the total amount of damage in court. The issue in dispute is purely legal, not factual; thus, this matter is appropriate for summary judgment as no disputed material facts necessitate denying summary judgment.

[Insurer's] burden under T.C.A. § 20-16-101 is not particularly lofty. Nonetheless, [Insurer] provide[s] more

than sufficient evidence to carry [its] own burden and shift the summary judgment burden to [Homeowners]. . . .

Under the now-shifted burden, [Homeowners] posit[] two arguments to avoid summary judgment, each of which has the same conclusion: the appraisal provision is not binding. The first of [Homeowners'] two arguments is, essentially, that the appraisal provision is *not* the same as an arbitration clause and therefore is not binding. The second, alternative, argument is that the appraisal is essentially an arbitration clause, but because it was not initialed separately in accordance with T.C.A. § 29-5-302(a), it is an invalid arbitration clause.

To address these in reverse order, [Homeowners'] second argument clearly fails because appraisal clauses are clearly not arbitration clauses. The court of appeals in *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142 (Tenn. Ct. App. 2001), addressed this exact question. . . . [T]his Court likewise concludes that appraisal clauses are not arbitration clauses, and therefore the absence of initials here does not impact whether that provision is binding on [Homeowners].

Before addressing [Homeowners] other argument – that because the appraisal clause is not an arbitration clause, it is not binding on [Homeowners] – the Court wishes to narrow the issue and identify what is, and, perhaps more importantly, what is not being challenged by [Homeowners] in this lawsuit. [Homeowners] are not challenging the existence of the appraisal clause in the contract. [Homeowners] are not challenging the procedure dictated by the appraisal clause. [Homeowners] are not challenging the application of the procedure with regards to any type of bias or favoritism. [Homeowners] are not challenging the credentials, credibility, or any other specific qualification of the umpire that was used in this case. [Homeowners] are not challenging the general validity of the appraisal clause. Instead, [Homeowners] are narrowly challenging the dollar-value conclusion reached by the umpire and agreed-to by [Insurer's] appraiser. In other words, [Homeowners] are not challenging the general process or the application of the process, but merely challenging the conclusion of the process.

Turning now to [Homeowners'] other argument aimed at avoiding summary judgment, [Homeowners] ask this Court to

hold the appraisal clause is not binding and that they retain the right to challenge the determined value of damages in a court proceeding. . . . [Homeowners] provide one argument: that appraisal clauses related to residential property are not binding. The Court finds this argument is not supported by the holding in *Merrimack* and the fact the property in that case happened to be residential did not actually factor into the analysis. . . .

\* \* \*

In essence, the question in *Merrimack* dealt with the degree of finality (or extent to which the parties were bound) from the value of damages as determined by the umpire. The homeowner argued that whatever number was determined by the umpire was final, binding, and without exception. The insurance company argued that the dollar amounts were final, but which amounts were actually owed remained undetermined. Here, in this present matter, it is particularly noteworthy that [Homeowners] are only challenging the dollar value of damages as determined by the umpire – in other words, [Homeowners] ask this Court to increase those numbers, not to decide any questions about coverage or liability.

\* \* \*

To this Court, *Merrimack* stands for the following legal principles. First, appraisal clauses are not the same as arbitration clauses. Second, appraisers' (and eventually umpires') scope of authority is strictly defined by the contract or other agreement of the parties, and typically that scope is limited to finalizing the valuation of damage. Third, the umpire's determinations with regards to matters within the scope of authority granted to the umpire are binding on the parties and may not be challenged in court where the challenge is only based upon the umpire's determined amount.

This third principle, though not explicitly stated in *Merrimack*, is the only possible inference based upon the reasoning and holding of the case. The court discussed at length why the insurance company was permitted to alter the umpire's findings *only* when the alteration was based upon issues of liability, causation, or other valid reasons of denied

coverage – because the insurance company was altering matters outside the umpire's scope of authority. The one facet not allowed to be altered, then, would be matters inside the scope of authority – the value of the loss. . . . The insurance company was only permitted to differ from the umpire's findings on issues that were not within the umpire's discretion to determine. Implicit here is that the insurance company, then, could *not* ignore or disagree with the umpire's determination on matters that fell within the authority given to the umpire. The *Merrimack* decision spends considerable time on the circumstances and issues where it is permissible for a party to dispute the findings of an umpire. Obviously where the umpire's findings cannot be disputed, that determination would be considered binding upon the parties. ***Put simply: an umpire's determination on any matter within the scope of authority granted to the umpire under the appraisal clause is binding upon the parties to the contract; any question outside that scope remains subject to judicial challenge.***

*Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.2d 202 (Tenn. Ct. App. 2013) – the other primary case relied upon by both parties – lends further support [to] this Court's reading of *Merrimack*. In *Artist Bldg.*, the court upheld the trial court's grant of summary judgment on an issue related to an appraisal provision and umpire determination. In sum, an umpire made determinations on a host of matters, and those determinations were then challenged in court. Both the trial court and court of appeals found that the determinations made by the umpire that were being challenged in court did fall within the authority granted to the umpire. Because the challenges went to matters that were within the umpire's authority to determine, summary judgment was granted dismissing the challenges because of "the binding nature of [the umpire's] decision."

Furthermore, the insurance company raised several factual issues that called into question whether or not the determination made by the umpire was a good or sound determination. The court did not even consider these facts, instead noting that "[t]hese facts are irrelevant at this stage of the proceeding," because "the parties expressly agreed that the [umpire] would decide" that issue. The court stated that since the umpire reached a determination on that issue, "that

decision was binding." In essence, the court determined that for matters within the discretion of the umpire, those matters are binding and not subject to judicial review of competing facts or arguments that the umpire should have (or could have) reached a different conclusion.

Applying these principles to the present case requires a determination of what this contract authorizes the umpire to decide and whether [Homeowners'] challenge relates to something within or excluded from that scope. This is not a difficult application. ***The insurance contract is clear in its terms that the determination of the umpire "shall" bind the parties. Further, the provision is clear with regard to the scope of authority granted to the umpire. It states the appraisal clause is to be used to "set the amount of loss." Thus, based upon a plain reading of the unambiguous language, the one aspect of the umpire's determination that is clearly binding is the determination with regard to the monetary amount of loss.***

The second step, then, considers whether [Homeowners] are challenging something within the binding authority of the umpire or outside that granted authority. . . . The only thing being challenged by [Homeowners] in this case is the amount of loss and nothing else. . . . Unfortunately for [Homeowners], this is one of the few things they are unable to challenge. They are bound by the terms of their contract and this provision. The umpire was given express and exclusive rights to set the amount of loss and [Homeowners] are bound by, and thereby prohibited from challenging, this.

\* \* \*

The Court is aware that the contract at issue, being the insurance policy, is an adhesion contract. Certainly, adhesion contracts may be repugnant, at least from the perspective of [Homeowners'] ability to negotiate the terms of the contract[.] However, under the facts presented to the Court in this case and in light of the Court's understanding of the law . . . the Court is constrained to enforce the contract as written. Simply state[d], the terms relating to the appraisal clause are not so unconscionable, oppressive, or outside the parties' reasonable expectation so as to be unenforceable.

*To summarize the Court's findings: the appraisal clause is not an arbitration clause. An umpire's authority is narrowly tailored based upon the authority contractually delegated to the umpire. All determinations made by an umpire on matters within that scope of authority are binding on all parties. Though certain aspects surround[ing] the processes might be reviewable by courts, the determinations themselves are not subject to judicial review. Here, the contract's appraisal provision clearly gives the umpire authority to set the value of loss. The umpire did just that. [Homeowners] have only challenged the value that was set by the umpire, which is the precise determination [that] is binding and thus not challengeable.* Accordingly, [Insurer's] motion for summary judgment is granted.

(Emphasis added. Internal citations and footnotes omitted.). This timely filed appeal by Homeowners followed.

## II. ISSUES

The issues raised on appeal by Homeowners are as follows:

A. Whether the appraisal provision of Homeowners' insurance policy should be enforced.

B. Whether Homeowners deserve prejudgment interest.

## III. STANDARD OF REVIEW

As this court recently noted in *Fuller v. Banks*, No. W2015-01001-COA-R3-CV, 2016 WL 409639 (Tenn. Ct. App. Feb. 3, 2016):

For actions initiated on or after July 1, 2011, such as the one at bar, the applicable standard of review for summary judgment is set out in Tennessee Code Annotated Section 20–16–101. *See Rye v. Women's Care Center of Memphis, MPLLC*, ––– S.W.3d ––––, ––––, 2015 WL 6457768 at *11 (Tenn. Oct. 26, 2015). The statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

- 8 -

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20–16–101. The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is de novo with no presumption of correctness. *Rye*, —— S.W.3d at ——, 2015 WL 6457768 at *12; *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.,* 395 S.W.3d 653, 671 (Tenn.2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn.2010)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye*, —— S.W.3d at ——, 2015 WL 6457768 at *12 (quoting Tenn. R. Civ. P. 56.04). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56, our Supreme Court has explained:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner

provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. [v. Zenith Radio Corp.]*, 475 U.S. [574,] 586, 106 S.Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Fuller*, 2016 WL 409639 at *2-3 (quoting *Rye*, ⎯⎯ S.W.3d at ⎯⎯, 2015 WL 6457768 at *22).

Insurance policies are contracts. *Merrimack Mutual Fire Ins. Co.*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.,* 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998). "As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000); *Hurley v. Tenn. Farmers Mut. Ins. Co*., 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995). The terms of an insurance policy "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. *Naifeh v. Valley Forge Life Ins. Co*., 204 S.W.3d 758, 768 (Tenn. 2006). The primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Clark v. Sputniks*, 368 S.W.3d 431, 441 (Tenn. 2012). The policy should be construed "as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement." *Id.* (quotations omitted).

## IV. DISCUSSION

Referring to the selection of two appraisers and an "umpire" appraiser, subsection 6 of section I of the policy states, "Written agreement signed by any two of these three [appraisers and umpire] shall set the amount of the loss." The umpire and one other appraiser agreed the amount of loss was $132,793.95. Homeowners do not suggest the appraisal was improperly conducted or there were any coverage issues with the award. They simply desire more money. In a well-reasoned opinion, the trial court determined Homeowners should be bound by the appraisal provision.

The parties agreed the appraisal panel would "set the amount of the loss." Homeowners, therefore, are not entitled to disregard the policy's expressed intent and contest the appraisers' finding. *See Artist Building Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202 (Tenn. Ct. App. 2014) ("[T]he parties expressly agreed that the appraisal panel would decide . . . ."). *Id.* at 217-19. We affirm the trial court's finding the parties are bound to the appraisers' determination of the amount of loss. The determinations by the appraisal panel did not exceed the scope of its authority. There is no genuine issue of material fact as to the binding nature of the appraisal panel's finding.

Homeowners assert the appraisal provision is in effect an agreement to arbitrate, and as such must comply with the requirements of Tennessee Code Annotated section 29-5-302(a). In *Merrimack Mutual Fire Insurance Company v. Batts*, 59 S.W.3d 142 (Tenn. Ct. App. 2001), we rejected the very same theory and held an appraisal provision of a property insurance policy was not an agreement to arbitrate subject to the Uniform Arbitration Act. *Id.* at 147-50. Referring to treatises and case law from other jurisdictions, the *Merrimack* court concluded "arbitration proceedings and appraisal proceedings are not the same thing." 59 S.W.3d at 149. The decision described arbitration as a formal proceeding used as an alternative to going to court to decide issues of both law and fact. An appraisal, on the other hand, was described as a means to quantify the monetary value of a property loss. *Id.,* at 149-50. Thus, we have squarely held an appraisal provision in a homeowners' policy is not an agreement to arbitrate subject to the Uniform Arbitration Act. Homeowners have not presented us any basis for abrogating our decision. None of the authorities cited by Homeowners are sufficient for us to overturn *Merrimack*. The signature requirements of section 29-5-302(a) of the Uniform Arbitration Act do not apply to appraisals. *Id.,* at 150-52. The trial court properly enforced the appraisal provision of Homeowners' policy and found the parties are bound by the decision of the appraisers. Prejudgment interest is not warranted.

## V. CONCLUSION

We affirm the decision of the trial court granting summary judgment to Insurer. This case is remanded for further proceedings as may be necessary. Costs of the appeal are assessed to Joseph C. Thomas and Grace E. Daniell.

_____
JOHN W. McCLARTY, JUDGE