IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 21, 2005 Session

## DANIEL GATES D/B/A FURNITURE WORLD
v.
## STATE AUTOMOBILE MUTUAL INSURANCE COMPANY AND
WALTER WALLACE

An Interlocutory Appeal from the Chancery Court for Madison County
No. 62244     J. Steven Stafford, Judge

_____

No. W2005-00386-COA-R9-CV - Filed December 28, 2005

_____

This case involves business interruption insurance. The furniture store owned by the plaintiff typically sells furniture under "rent to own" payment plans, whereby customers purchase the furniture through payments over time. The furniture store was damaged by a tornado. As a result, the store was closed for eight months for repairs. The plaintiff store owner had a business interruption insurance policy with the defendant insurance company that covered the loss of business income during the time in which the store was closed for restoration. The store owner sued the insurance company for the loss of business income it would have received during the eight-month period of restoration. Cross-motions for partial summary judgment were filed regarding how to measure the loss of income. The store owner claimed he was entitled to the entire value of sales contracts that would have been signed during the period of closure, even though most of the payments under those contracts would be due after the eight-month restoration period. The insurance company, on the other hand, claimed that the store owner was entitled only to the value of payments that actually would have been received by the store during the eight-month restoration period. The trial court granted partial summary judgment to the store owner, finding that the store owner was entitled to the entire value of the contracts that would have been signed during the restoration period. The insurance company was granted permission to file this interlocutory appeal. We affirm.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Parks T. Chastain and David M. Hannah, Nashville, Tennessee, for the appellant, State Automobile Mutual Insurance Company.

J. Brandon McWherter and Lewis L. Cobb, Jackson, Tennessee, for the appellee, Daniel Gates d/b/a Furniture World.

## OPINION

Plaintiff/Appellee Daniel Gates ("Gates") is the sole proprietor of a furniture business called Furniture World, with five business locations in Madison County, Tennessee. Furniture World offers "purchase/rental" financing arrangements to its customers, whereby customers are permitted to purchase furniture over time, usually over an eighteen-month period. Under this arrangement, the customer signs an agreement to make monthly payments for the full rental term. If all of the payments are made as scheduled, the customer acquires ownership of the furniture. If the customer does not make the payments as scheduled for the full rental term, he must return the furniture to Furniture World.

On May 4, 2003, a series of tornados struck Madison County, and several of Furniture World's business locations were damaged. One Furniture World location sustained particularly heavy damage and had to remain closed for repairs until December 26, 2003. At that time, Furniture World was insured under a policy issued by Defendant/Appellant State Automobile Mutual Insurance Company ("State Auto"). The policy covered casualty losses, as well as the loss of business income from the necessary cessation of business, also referred to as "business interruption" insurance.

After the tornado damage to his store, Gates submitted a claim for, among other things, the loss of business income resulting from the store's closure from May 4 through December 26, 2003. After it received Gates' claim, State Auto retained a forensic accounting firm, Morgan, Johnson, Carpenter & Company, to evaluate his claim for loss of business income. Mark Henry ("Henry") was the principle forensic accountant working on the case. Gates provided Henry with numerous documents to support his claim for loss of business income. Henry analyzed the pertinent documents and determined that Furniture World's "lease maintenance ratio" was about 80%; that is, approximately 80% of its signed purchase/rental contracts are fulfilled by the customer and the customer acquires ownership of the furniture. The remaining 20% of the agreements signed were not carried to full term. After its evaluation, State Auto did not pay the entire amount of Gates' claim for loss of business income for the store.

On June 23, 2004, Gates filed this lawsuit against State Auto for breach of contract, violation of the Tennessee Consumer Protection Act, fraud, and bad faith failure to pay benefits under the policy.[1] On October 14, 2004, Gates filed a motion for partial summary judgment regarding the proper method for calculating his loss of business income. In his motion, Gates argued that the measure of his loss of business income should include the entire value of the purchase/rental contracts that would have been signed during the eight-month period in which his business was

---

[1] Gates also named Walter Wallace, an adjuster for State Auto, as a defendant. Wallace is not a party to this appeal.

interrupted. In support of that motion, Gates submitted his own affidavit and a statement of undisputed facts.

State Auto filed a response to Gates' motion and a cross-motion for partial summary judgment, supported by an affidavit by Henry and a separate statement of undisputed facts. In its response and in its cross-motion, State Auto argued that Gates should be compensated only for payments that he would have *received* during the eight-month restoration period, not for the entire value of the purchase/rental contracts that would have been signed during that period. State Auto maintained that this interpretation of its policy was consistent with Furniture World's "cash basis" accounting practice, crediting income only when the money was received, rather than crediting the entire contract price in the month of the sale.

To illustrate their arguments, the parties utilized a hypothetical in which Jane Doe, but for the tornado, would have bought an $1,800 bedroom suit from Furniture World through a purchase/rental agreement in December 2003. Under the purchase/rental contract, Doe would have agreed to make payments of $100 per month for eighteen months. Under this scenario, Gates argued, Furniture World's loss of business income should be measured as $1,800, the entire value of the contract. State Auto, on the other hand, argued that the loss of business income would have been only $100, the single December payment that would have been received by the store pursuant to the contract during the store's period of restoration.

On December 6, 2004, the trial court heard oral argument from the parties on their cross-motions for partial summary judgment. On December 21, 2004, the trial court entered an order on the parties' motions. The trial court noted that the parties had stipulated to the facts and that this was an appropriate case for the grant of partial summary judgment. Without elaborating on its reasoning, the trial court concluded that "the method proposed by the plaintiff is the proper method for calculating the loss of business income pursuant to the subject insurance policy." Therefore, it granted Gates' motion for partial summary judgment and denied State Auto's cross-motion. State Auto then filed a motion for permission to file an interlocutory appeal, which was granted by the trial court and by this Court.

On appeal, State Auto argues that the trial court erred in granting partial summary judgment to Gates, making the same argument it made in the trial court regarding the measure of Gates' loss of business income. It asserts that Gates is entitled only to the loss of payments that would have been received by him during the eight-month period of business interruption. Gates, however, maintains that the trial court correctly measured his loss of business income by using the entire value of the purchase/rental contracts.

The facts are undisputed, and this appeal involves a single issue of contract interpretation, which is an issue of law. We review this issue *de novo*, with no presumption of correctness afforded to the trial court's decision. Insurance policies must be interpreted "in the same manner as any other contracts," and the provisions therein must be given their "plain, ordinary and popular sense." ***Osbourne v. Mountain Life Ins. Co.***, 130 S.W.3d 769, 773 (Tenn. 2004). The language of an

insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. ***Am. Justice Ins. Reciprocal v. Hutchison***, 15 S.W.3d 811, 815 (Tenn. 2000). When a provision that purports to limit insurance is ambiguous, it must be construed against the insurance company and in favor of the insured. ***Osbourne***, 130 S.W.3d at 773. In order to find in favor of the insured, however, the ambiguous provision must be susceptible to a reasonable interpretation favoring the insured. ***Marlin Fin. & Leasing Corp. v. Nationwide Mut. Ins. Co.***, 157 S.W.3d 796, 809 (Tenn. Ct. App. 2005).

The parties concede that this is an issue of first impression in Tennessee, and that, generally, there is little law on the interpretation of business interruption insurance policies. The only Tennessee case that addresses this type of policy is ***Cont'l Ins. Co. v. DNE Corp.***, 834 S.W.2d 930 (Tenn. 1992). In that case, the Sixth Circuit Court of Appeals certified to the Tennessee Supreme Court two issues regarding coverage under a business interruption policy, both unrelated to the issue in this case. As useful background, however, the Supreme Court explained the purpose of business interruption insurance:

> The purpose of business interruption insurance is to protect the insured against losses that occur when its operations are unexpectedly interrupted, and to place it in the position it would have occupied if the interruption had not occurred. A related rule is that a policy of this type may not be used to place the insured in a better position than it would have occupied in the absence of the catastrophe.

***DNE Corp.***, 834 S.W.2d at 934.

With that purpose in mind, we examine the relevant language in the insurance policy at issue. The insurance policy provides:

> We will pay for the *actual loss* of Business Income you sustain *due to* the necessary suspension of your "operations" during the "period of restoration". . . . We will only pay for loss of Business Income that you sustain *during* the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.

Policy Section A.5.f(1) (emphasis added). It is undisputed that the "period of restoration" in this case is the eight months that the Furniture World store was closed between May 4 and December 26, 2003. "Business Income" is defined in the policy as follows:

> i. Net Income (Net Profit or Loss before income taxes) ***that would have been earned or incurred if no physical loss or damage had occurred*** . . . ; and
> ii. Continuing normal operating expenses incurred, including payroll.

-4-

Policy Section A.5.f(1)(b) (emphasis added).  Under these provisions, State Auto has agreed to pay Gates the net income "that would have been earned or incurred" during the period of restoration, with the proviso that it will pay only for the loss of income sustained during that period.

State Auto argues that, under the plain, unambiguous language of the policy, Gates is not entitled to payments for the *entire value* of any lost purchase/rental contracts that would have been signed during the period of restoration.  State Auto argues that "income" is money that the insured person *receives*, not potential income or the value of an entire sale.  State Auto points to the limiting language which provides that it will pay only for "actual" loss of income sustained "during" the period of restoration.  It claims that compensating Gates for the entire value of the contracts would result in a windfall to him, rather than placing him back where he would have been in the absence of the catastrophe.  State Auto asserts that some customers who were unable to make a purchase from the closed Furniture World store during the restoration period might have rented furniture from another Furniture World location or waited until the store reopened.  Under that scenario, State Auto argues, Gates would be compensated for a "lost sale" that was not actually lost.  State Auto also notes that Furniture World's accounting method credits income only when the money is received from the customer; the entire amount of the lease obligation is not credited as income in the month in which the purchase/rental contract was executed.  These accounting practices, State Auto argues, support its position that Gates should be paid only the amount of monies that the store would have actually received during the restoration period.

In response, Gates argues that the valuation method for loss of business income adopted by the trial court simply places him in the position in which he would have been but for the interruption in his business.  He does not dispute the determination by State Auto's accounting firm that only 80% of the contracts that would have been signed during the period of restoration would have actually been completed, and so he does not seek the full value of 20% of the contracts.  He argues as well that the insurance policy provisions are ambiguous on this issue, and that, therefore, they should be construed in his favor.

The language of the insurance policy states that State Auto will compensate Gates for "the actual loss of Business Income you sustain due to the necessary suspension" of the business.  The limiting language cautions that the policy covers only the "loss of Business Income that you sustain *during* the 'period of restoration.'"  The "Business Income" to which the provisions refer is defined as "net income . . . *that would have been earned* or incurred if no physical loss or damage had occurred . . . ." (Emphasis added).  The question becomes, then, whether the income that would have been earned during the restoration period is the entire value of 80% of the contracts that would have been signed, or whether it includes only the monies that would have actually been received on the contracts signed during that time.  Neither party cites any caselaw addressing this issue.

State Auto's interpretation of the policy language is indeed plausible.  The limiting language emphasizes that State Auto will pay only "actual loss of Business Income"  sustained "during" the period of restoration, and Furniture World's accounting does not in fact credit the contract payments as income until the payment is actually received.  However, in looking at the meaning of the

"Business Income," which is "net income . . . that would have been *earned* during the restoration period," we note that BLACK'S LAW DICTIONARY, defines the term "earn": "To acquire by labor, service or performance . . . . To do something that entitles one to a reward or result, *whether it is received or not*." BLACK'S LAW DICTIONARY 525 (7th ed.) (emphasis added). This definition of "earn" suggests that a "reward or result" is earned when the actor becomes entitled to the reward or result, "whether [the reward or result] is received or not."

In interpreting a business interruption insurance policy, one authority suggests that "losses covered by business interruption insurance should be determined in a practical way, having regard for the nature of the business and the methods employed in its operation, in order to give practical effect to the intentions of the parties and the purpose of the insurance as evidenced by the terms, conditions, and provisions of the policy." William H Danne, Jr., J.D., Annotation, *Business Interruption Insurance*, 37 A.L.R.5th 41, § 32(a) (1996). This same authority notes that "the insured's books and accounting practices are not controlling in determining the recoverable loss . . . although, by the same token, they are not irrelevant and should be given such weight as practical judgment dictates." *Id.* at § 32(e). Consideration of all of these factors is appropriate in this case, given Furniture World's method of doing business. Because payments for the furniture are made over time, Furniture World undoubtedly received payments during the period of restoration on contracts signed prior to the tornado damage to the store. Consequently, much of the real loss would occur after the store had been closed for a period of time, as payments on existing contracts diminished and no new contracts were signed.[2] Therefore, while Furniture World's accounting practices are relevant, we must also consider "the nature of the business and the methods employed in its operation." *Id.* at 32(a). We must conclude that the interpretation advocated by State Auto, given the nature of Furniture World's business and its method of operation, would defeat the essential purpose of business interruption insurance, that is, to place the insured "in the position it would have occupied if the interruption had not occurred." *DNE Corp.*, 834 S.W. 2d at 934. The interpretation adopted by the trial court is, under the circumstances of this case, more consonant with the language of the policy as well as the purpose of this type of insurance.

State Auto argues that the trial court's interpretation does not account for contingencies such as the customer who chooses to go to a different Furniture World store or wait for the damaged store to reopen. This interpretation, however, does not preclude State Auto from introducing any proof on whether such contingencies occurred and their frequency.

For all of these reasons, we must conclude that the trial court did not err in granting partial summary judgment in favor of Gates and in denying State Auto's motion for summary judgment.

---

[2]This would become even more apparent if, for example, Furniture World offered its customers the classic "12-months-same-as-cash" arrangement, in which customers may pay for the item any time during the twelve months after the sale with no interest. In such a situation, under State Auto's interpretation, the insured would receive virtually no compensation for his loss of income.

The decision of the trial court is affirmed and the case is remanded for further proceedings not inconsistent with this Opinion. Costs on appeal are to be taxed to Appellant State Automobile Mutual Insurance Company, and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE